UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



PRAJNA GROUP CORP.,

                Plaintiff,

   - against -

GAVEA INTERNATIONAL, INC.,
GAVEASTONE USA, INC., GAVEASTONE
COMMERCIO INTERNACIONAL, LTDA., and
DAVID CONNELLY,

              Defendants.

Civil Action No.

COMPLAINT



Plaintiff Prajna Group Corp., by its attorneys, Olshan Grundman Frome Rosenzweig &

Wolosky LLP, alleges for its Complaint as follows:

### NATURE OF THIS ACTION

1.     This action arises from a scheme orchestrated by defendant David Connelly to

defraud persons who were investors in, and secured creditors of, a series of corporations that

Connelly created and/or Connelly duped those persons initially by issuing a fraudulent private

placement memorandum that misrepresented key facts concerning his corporations' sales and

profit margins.  By continuing to make such representations, and by furnishing false financial

reports and other documents in support of these representations, Connelly managed to extract

over half a million dollars, $366,000 in loans and stock purchases, and $157,885 in fees, payable

in stock, from investors.  Connelly manipulated company assets as if they were his own, spent a

portion of the invested money for personal expenses, and squandered the rest.  Now, upon

discovering this fraud and various defaults under a security agreement, plaintiff Prajna Group

Corp., in its capacity as the defrauded investors' and creditors' assignee, commences this action

for securities fraud, common-law fraud, breach of contract, replevin, and also for injunctive relief to prevent Connelly from dissipating what remains of Prajna's collateral.

THE PARTIES

2.      Prajna Group Corp. ("Prajna") is a Delaware corporation with its principal place of business located in New York, New York. Prajna is primarily engaged in the business of investing in small private companies. Aside from its own direct interest in this matter, Prajna is the assignee of the interests of Sangha Associates, Inc. ("Sangha"), and of Dean Willard, who is President of both Prajna and Sangha.

3.      Upon information and belief, defendant Gavea International, Inc. ("Gavea International") is a Delaware corporation with its principal place of business located in Seal Beach, California. Gavea International is primarily engaged in the business of importing Brazilian granite.

4.      Upon information and belief, defendant GaveaStone USA, Inc. ("Gavea USA") is a Delaware corporation with its principal place of business located in Seal Beach, California. Gavea USA is qualified to do business in California. Upon information and belief, Gavea USA is a wholly owned subsidiary of Gavea International and is doing business under the Gavea International name. Gavea USA is primarily engaged in the business of selling Brazilian granite.

5.      Upon information and belief, defendant GaveaStone Commercio Internacional, Ltda. ("Gavea Brazil") is a Brazilian limited liability company with its principal place of business located in Cachoeiro de Itapermirim, Brazil. Upon information and belief, Gavea Brazil is a wholly owned subsidiary of Gavea International and is doing business under the Gavea International name. Upon information and belief, Gavea Brazil is primarily engaged in the business of exporting Brazilian granite. Gavea International, Gavea USA, and Gavea Brazil shall be jointly referenced as "Gavea International."

491946-3

6.      Upon information and belief, defendant David Connelly ("Connelly") is, and at all relevant times has been, the President, or an executive officer, of Gavea International, Gavea USA, and Gavea Brazil (together, the "Gavea defendants").  Upon information and belief, Connelly also is a principal shareholder of Gavea International.

<u>JURISDICTION AND VENUE</u>

7.      This action arises under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, Rule 10b-5 promulgated thereunder, and the common law.  Accordingly, the Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, because this is a civil action arising under the laws of the United States.  In addition, the Court has supplemental jurisdiction over the common law claims asserted herein, pursuant to 28 U.S.C. § 1367.

8.      The Court also has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1332(a)(3) in that plaintiff Prajna and two of the defendants, Gavea International and Gavea USA, are citizens of different states, and defendant Gavea Brazil is a citizen of a foreign state. The Court also has jurisdiction over this proceeding pursuant to consents to jurisdiction in the Letter Agreement and Security Agreement between plaintiff's assignors and the Gavea defendants.

9.      Venue is proper in this Court, pursuant to 18 U.S.C. § 1965(a), because plaintiff Prajna's principal place of business is located in this district, and also because this Court is among the venues specified in forum-selection clauses in the Letter Agreement and Security Agreement between plaintiff's assignors and the Gavea defendants.

491946-3

## STATEMENT OF FACTS

**Connelly Fraudulently Induces Prajna and Its**
**Assignors to Finance the Gavea Defendants**

10.     In or about October 2004, Connelly provided a private placement memorandum to Dean Willard ("Willard"), President of Prajna and Sangha.  A copy of this memorandum is annexed as Exhibit A.

11.     The private placement memorandum contained the following false information:

- The memorandum stated that the Gavea defendants had sales of $345,600 in 2004; in reality, the Gavea defendants had no sales in 2004;

- The memorandum stated that the Gavea defendants enjoyed gross profit margins of approximately 20%; in reality, those margins were less than 10%, and insufficient to cover their direct sales expenses, much less overhead charges.

- The memorandum did not report any liabilities of the Gavea defendants for freight charges; in reality, the Gavea defendants had significant liabilities for unpaid freight charges; and

- The memorandum did not report any liabilities of the Gavea defendants for unpaid payroll taxes; in reality the Gavea defendants had significant liabilities for payroll taxes that they had collected from employees but had not remitted to tax authorities in the United States and in Brazil.

12.     In reliance on these misrepresentations and fraudulent omissions, Prajna purchased a $100,000 convertible promissory note from the Gavea defendants in or about January 2005.  A copy of that note is annexed as Exhibit B.

13.     Connelly's misrepresentations continued after Prajna's purchase of the $100,000 convertible promissory note.  In late 2004, Connelly advised Prajna and Willard of sales in November and December of 2004, which in fact had not taken place.  During this same period, Connelly repeatedly and falsely advised Prajna and Willard that Gavea International's gross profit margins continued to be approximately 20%.  In reality, however, they were no more than 10%.

491946-3

14.     On multiple occasions in 2005, Connelly presented to Prajna and Willard documents that appeared to be Gavea International sales invoices, and which Connelly described as such.  That description was false.  As Prajna later learned, the granite inventory shown in those invoices as having been sold was in fact merely consigned from Gavea International's inventory to third parties.  Upon information and belief, those third parties have not sold any of that inventory, nor paid any money to Gavea in exchange for that inventory.

Connelly Fraudulently Induces Prajna and Its Assignors
to Enter into the Exchange Agreement with Gavea International

15.     On or about August 22, 2005, Willard, Prajna, and Sangha, in reliance upon Connelly's misrepresentations and omissions as described above, entered into a Stock Purchase and Exchange Agreement with Gavea International (the "Exchange Agreement").  A copy of that agreement is annexed as Exhibit C.

16.     In Section 2.1(b) of the Exchange Agreement, Gavea International agreed to convert Prajna's $100,000 convertible promissory note into 353,787 shares of its common stock.

17.     In Section 2.1(a) of the Exchange Agreement, Gavea International agreed to sell 13,333 shares of its common stock to Prajna for a total price of $5,000.

18.     In Section 2.1(d) of the Exchange Agreement, Gavea International agreed to issue 40,000 shares of its common stock to Prajna as consideration for the "Willard Parties" entering into the Exchange Agreement.

19.     Beginning in or about July 2005, Willard and Sangha assigned to Prajna all of their rights under the Exchange Agreement.  At that time, Willard, Sangha, and Prajna were not aware that Connelly had made the false representations and omissions as described above.

-5-

491946-3

Gavea International Breaches the Exchange Agreement

20.     Prajna surrendered the $100,000 convertible promissory note to Gavea International pursuant to the Exchange Agreement.  But Gavea International did not deliver any shares of its common stock to Prajna as required by that agreement.

21.     Prajna paid $5,000 to Gavea International pursuant to the Exchange Agreement. But Gavea International did not deliver any of its shares of common stock to Prajna as required by that agreement.

22.     Although the "Willard Parties" (Prajna, Sangha, and Dean Willard) entered into the Exchange Agreement, Gavea International did not deliver any shares of its common stock to Sangha as required by that agreement.

Connelly Fraudulently Induces Prajna's Assignor
to Provide Additional Financing to Gavea

The Letter Agreement

23.     On or about August 22, 2005, in reliance on Connelly's misrepresentations and omissions as described above, Sangha entered into a Letter Agreement that established a revolving credit facility for the Gavea defendants.  A copy of that agreement is annexed as Exhibit D.

24.     In Section 6 of the Letter Agreement, the Gavea defendants agreed, among other things, to furnish to the Lender "within 90 days of the close of each fiscal year . . . the consolidated and consolidating balance sheet, statements of income and retained earnings and cash flows of Gavea and its subsidiaries as of the last day of and for such fiscal year . . .." The Gavea defendants also agreed in Section 6 to furnish to the Lender similar quarterly statements "within 45 days of the close of each fiscal quarter of Gavea . . .. "

491946-3

25.     Section 8 of the Letter Agreement provides, among other things, that an Event of Default occurs under the Letter Agreement if:

- The Gavea defendants default in the due payment of any other indebtedness for borrowed money;
- The Gavea defendants generally do not pay their debts as they come due; or
- The Gavea defendants furnish any materially incorrect information to the Lender.

26.     The Letter Agreement further provides that if an Event of Default occurs, the "Lender may, without notice to or demand upon the Debtors, declare this Agreement to be in default, and the Lender shall thereafter have in any jurisdiction in which enforcement hereof is sought, in addition to all other rights and remedies, the rights and remedies of a secured party under the Uniform Commercial Code of New York or of any jurisdiction in which Collateral is located, including, without limitation, the right to take possession of the Collateral, and for that purpose the Lender may, so far as the Debtors can give authority therefor, enter upon any premises on which the Collateral may be situated and remove the same therefrom.  The Lender may in its discretion require the Debtors to assemble all or any part of the Collateral at such location or locations within the jurisdiction(s) of the Debtors' principal office(s) or at such other locations as the Lender may reasonably designate."

27.     The Letter Agreement further provides that "the Debtors waive any and all rights that they may have to a judicial hearing in advance of the enforcement of any of the Lender's rights hereunder, including, without limitation, its right following an Event of Default to take immediate possession of the Collateral and to exercise its rights with respect thereto."

28.     Under the Letter Agreement, each of the Gavea defendants consented "to the non-exclusive jurisdiction of any New York State Court or United States District Court sitting in New York for the adjudication of any rights or claims arising under this letter agreement or the Note."

491946-3

The $200,000 Promissory Note

29.     In connection with the Letter Agreement, the Gavea defendants signed a $200,000 promissory note dated August 22, 2005, and payable to Sangha.  A copy of that note is annexed as Exhibit E.  Paragraph 1 of that note provides that it is subject to all of the terms and conditions contained in the Letter Agreement.

The Securities Agreement

30.     Also on August 22, 2005, Sangha and the Gavea defendants entered into a Security Agreement in connection with the revolving credit facility established under the Letter Agreement.  A copy of the Security Agreement is annexed as Exhibit F.

31.     Under the Security Agreement, the Gavea defendants granted to Sangha first-priority security interests in all of their personal property and fixtures, including equipment, inventory, accounts, chattel paper, contract rights, general intangibles, investment property, deposit accounts, and books and records.  Sangha perfected those interests by filing UCC-1 filing documents.  Copies of those statements are annexed as Exhibit G.

32.     Section 14 of the Security Agreement provides that "[I]f an Event of Default (as defined in the Letter Agreement) shall have occurred and be continuing, the Lender may, without notice to or demand upon the Debtors, declare this Agreement to be in default, and the Lender shall thereafter have in any jurisdiction in which enforcement hereof is sought, in addition to all other rights and remedies, the rights and remedies of a secured party under the Uniform Commercial Code of New York or of any jurisdiction in which Collateral is located, including, without limitation, the right to take possession of the Collateral, and for that purpose the Lender may, so far as the Debtors can give authority therefor, enter upon any premises on which the Collateral may be situated and remove the same therefrom.  The Lender may in its discretion require the Debtors to assemble all or any part of the Collateral at such location or locations

-8-

within the jurisdiction(s) of the Debtors' principal office(s) or at such other locations as the Lender may reasonably designate."

33.     Section 14 of the Security Agreement further provides that "the Debtors waive any and all rights that they may have to a judicial hearing in advance of the enforcement of any of the Lender's rights hereunder, including, without limitation, its right following an Event of Default to take immediate possession of the Collateral and to exercise its rights with respect thereto."

34.     Section 21 of the Security Agreement provides, among other things, that it shall in all respects be governed by, and construed and enforced in accordance with, (a) the law of New York . . . ." The parties further agreed in Section 21 that "[a]ny legal suit, action or proceeding against Debtors or Lender arising out of or relating to this Agreement may at Lender's option be instituted in any federal or state court in the City of New York, County of New York . . . ."

The Gavea Defendants Draw Upon
The Revolving Credit Facility

35.     Also on or about August 22, 2005, the Gavea defendants borrowed a total of $200,000 under the revolving credit facility established under the Letter Agreement.

36.     In or about September 2005, Connelly presented to Prajna a set of financial statements for the Gavea defendants that contained numerous erroneous entries and omitted significant financial liabilities.  In addition, these statements contained false entries of significant monies owned to Connelly, while in reality Connelly owed money to the Gavea defendants because of his practice of withdrawing cash from the Gavea defendants' accounts for his personal use.

37.     On or about November 29, 2005, the Gavea defendants borrowed an additional $90,000 from the revolving credit facility established under the Letter Agreement.

491946-3

38.     During the period from on or about November 29, 2005 to on or about March 17, 2006, the Gavea defendants drew down an additional $40,000 under the revolving credit facility established under the Letter Agreement.

39.     On or about August 22, 2005, Sangha assigned to Prajna all of its rights under the $200,000 promissory note, the Letter Agreement, and the Security Agreement. At that time, Sangha and Prajna were not aware that Connelly had made any false representations or omissions as described above, or that any Event of Default had occurred under the Letter Agreement or the Security Agreement.

Prajna Learns of the Defendants' Fraud and Defaults

40.     In or about late February 2006, Prajna learned for the first time that the financial statements and invoices for the Gavea defendants that Connelly had provided were materially false and inaccurate. Prajna also learned that Connelly had falsely recorded as sales a number of transactions that actually were consignments of inventory to third parties in California and Florida. Prajna also learned that Gavea International was not paying its debts as they became due.

41.     Learning these facts led Prajna to investigate further. In the course of that investigation, Prajna learned that the Gavea defendants held accounts receivable of approximately $180,000, rather than $300,000 as reported in their financial statements, and that approximately 13 containers of granite belonging to Gavea International, which Gavea International had reported as having been sold, were in the possession of third parties in California and Florida as unpaid consigned inventory. Prajna also learned that Connelly had actively prevented the Gavea defendants from furnishing financial statements to Sangha as required by Section 6 of the Letter Agreement.

-10-

42.     Prajna also learned that Connelly was looting the Gavea defendants for his personal benefit.  For example, Connelly had regularly reimbursed himself from Gavea International cash account for business expenses that had been originally paid with the company's funds.  In addition to this double-dipping, Connelly paid his and his family's personal living expenses, such as apartment rent, automobile payments, cable television service, telephone service, and groceries from Gavea International's cash account.

43.     Prajna also learned that in December 2005 Connelly and a long-time friend, to whom Gavea International pays a $2,500 monthly salary for no discernible work, drew $9,000 from Gavea International, allegedly for food and lodging expenses during a one-week trip to Brazil.  Connelly and his friend received that sum by wire in Brazil during their trip.  Neither of them has submitted any receipts to substantiate the claimed $9,000 in expenses.

44.     Prajna also learned that in at least two other instances, Connelly has started a company, taken money from investors for the ostensible purpose of financing the company's operations, incurred large personal expenses in the company's name, then moved on, leaving the company's investors and creditors empty-handed.

45.     Gavea International has made no sales since December 2005.  Although the business of these defendants is moribund, Connelly continues to take money from their cash accounts to pay his personal expenses.

46.     The above-described representations and omissions were made in connection with the purchase and sale of securities, within the meaning of 15 U.S.C. § 78c(a)(13) and (14).  To wit, the statements were made in connection with the Exchange Agreement to induce Prajna and Prajna's assignor to enter into, and then consummate, that agreement.

FIRST CLAIM FOR RELIEF: SECURITIES FRAUD
IN VIOLATION OF SECTION 10(b) AND RULE 10b-5
(Against All Defendants – 15 U.S.C. § 78j(b))

47.     As set forth above, Connelly made false material representations and omissions to Willard, Sangha, and Prajna concerning the Gavea defendants' gross profit margins and sales.

48.     Connelly and Gavea International knew that these representations and omissions were false and material, and intended that Prajna and Prajna's assignors Willard and Sangha rely upon them purchase the $100,000 convertible promissory note, to enter into the Exchange Agreement, and to surrender the $100,000 convertible promissory note.  Connelly and the Gavea defendants never had any intention of honoring their obligations under the Exchange Agreement.

49.     Prajna and its assignors Willard and Sangha reasonably relied upon these representations and omissions.  Prajna would not have purchased the $100,000 convertible promissory note otherwise.  Prajna, Sangha, and Willard would not have entered into the Exchange Agreement, Prajna would not have surrendered the $100,000 convertible promissory note, and Prajna would not have paid Gavea International $5,000 if they had known the truth concerning the Gavea defendants' gross profit margins and sales.

50.     The above-described representations and omissions were made in connection with the purchase and sale of securities, within the meaning of 15 U.S.C. § 78c(a)(13) and (14).  To wit, the statements were made in connection with the $100,000 convertible promissory note to induce Prajna to purchase that note, and in connection with the Exchange Agreement to induce Prajna and Prajna's assignors to enter into, and then consummate, that agreement.

51.     As Willard's and Sangha's assignee, Prajna has standing to assert all claims that Willard or Sangah could have brought against Connelly and the Gavea defendants arising from the $100,000 convertible promissory note and the Exchange Agreement.

491946-3

52.    As a result of Willard's, Sangha's, and Prajna's reliance upon Connelly's false material representations and omissions, Prajna has suffered damages in an amount to be determined at trial, but in no event less than the $100,000 face value of the $100,000 convertible promissory note that Prajna purchased, then surrendered under the Exchange Agreement, the interest due on that note, and the $5,000 that Prajna paid to Gavea International.

SECOND CLAIM FOR RELIEF: FRAUD BY CONTROLLING
PERSON IN VIOLATION OF SECTION 20(a)
(Against David Connelly — U.S.C. §78t(a))

53.    Prajna repeats the allegations contained in paragraphs 1 through 52 above as if fully set forth herein.

54.    As set forth above, Connelly made fraudulent material representations and omissions with intent that Prajna and its assignors would rely upon them purchase the $100,000 convertible promissory note to enter into the Exchange Agreement, and to surrender the $100,000 convertible promissory note.

55.    As also set forth above, Prajna and its assignors Willard and Sangha reasonably relied upon these representations and omissions.

56.    As also set forth above, Connelly's representations and omissions were made in connection with the purchase and sale of securities, within the meaning of 15 U.S.C. § 78c(a)(13) and (14).

57.    Connelly, as president on principal shareholder of Gavea International, the parent company of Gavea USA and Gavea Brazil, is a controlling person of those companies within the meaning of 15 U.S.C. § 78t(a).

58.    As Willard's and Sangha's assignee, Prajna has standing to assert all claims that Willard or Sangah could have brought against Connelly arising from the $100,000 convertible promissory note and the Exchange Agreement.

491946-3

59.     As a result of Willard's, Sangha's, and Prajna's reliance upon Connelly's false material representations and omissions, Prajna has suffered damages in an amount to be determined at trial, but in no event less than the $100,000 face value of the $100,000 convertible promissory note that Prajna purchased, then surrendered under the Exchange Agreement, the interest due on that note, and the $5,000 that Prajna paid to Gavea International.

THIRD CLAIM FOR RELIEF: COMMON-LAW FRAUD IN CONNECTION WITH
THE $100,000 CONVERTIBLE PROMISSORY NOTE

60.     Prajna repeats the allegations contained in paragraphs 1 through 59 above as if fully set forth herein.

61.     As set forth above, the Gavea defendants' private placement memorandum contained false material representations and omissions.

62.     Connelly and the Gavea defendants knew that these representations and omissions were false and material, and intended that plaintiff's assignor Willard rely upon them to loan money to the Gavea defendants under the $100,000 convertible promissory note.

63.     Prajna's assignor Willard reasonably relied upon these representations and omissions, and would not have loaned any money to the Gavea defendants if he had known the truth concerning their sales, profit margins, and liabilities.

64.     As Willard's assignee, Prajna has standing to assert all claims that Willard could have brought against the Gavea defendants arising from the $100,000 convertible promissory note.

65.     As a result of Willard's reliance upon the false material representations and omissions in the Gavea defendants' private placement memorandum, Prajna has suffered damages in an amount to be determined at trial, but in no event less than the principal amount of the $100,000 convertible promissory note and the interest due thereon.

-14-

491946-3

FOURTH CLAIM FOR RELIEF: COMMON-LAW FRAUD IN CONNECTION
WITH THE EXCHANGE AGREEMENT
(Against David Connelly and Gavea International, Inc.)

66.    Prajna repeats the allegations contained in paragraphs 1 through 65 above as if fully set forth herein.

67.    As set forth above, Connelly made false material representations and omissions to Willard, Sangha, and Prajna concerning the Gavea defendants' gross profit margins and sales.

68.    Connelly and Gavea International knew that these representations and omissions were false and material, and intended that plaintiff and plaintiff's assignors Willard and Sangha rely upon them enter into the Exchange Agreement and to surrender the $100,000 convertible promissory note.  Connelly and Gavea International never had any intention of honoring their obligations under the Exchange Agreement.

69.    Prajna and its assignors Willard and Sangha relied upon these representations and omissions.  They would not have entered into the Exchange Agreement, and Willard would not have surrendered the $100,000 convertible promissory note, and Prajna would not have paid Gavea International $5,000 if they had known the truth concerning the Gavea defendants' gross profit margins and sales.

70.    As Willard's and Sangha's assignee, Prajna has standing to assert all claims that Willard or Sangah could have brought against Connelly and Gavea International arising from the Exchange Agreement.

71.    As a result of Willard's, Sangha's, and Prajna's reliance upon Connelly's false material representations and omissions, Prajna has suffered damages in an amount to be determined at trial, but in no event less than the $100,000 face value of the $100,000 convertible promissory note that Prajna surrendered under the Exchange Agreement, the interest due on that note, and the $5,000 that Prajna paid to Gavea International.

-15-

FIFTH CLAIM FOR RELIEF: COMMON-LAW FRAUD IN CONNECTION
WITH THE LETTER AGREEMENT, THE SECURITY AGREEMENT,
AND THE $200,000 PROMISSORY NOTE
(Against All Defendants)

72.     Prajna repeats the allegations contained in paragraphs 1 through 71 above as if fully set forth herein.

73.     As set forth above, Connelly made false material representations and omissions to Willard, Sangha, and Prajna concerning the Gavea defendants' gross profit margins and sales.

74.     Connelly and the Gavea defendants knew that these representations and omissions were false and material, and intended that Prajna and Prajna's assignors Willard and Sangha rely upon them to enter into the Letter Agreement and the Security Agreement, to loan money to the Gavea defendants through the credit facility established under the Letter Agreement, and to purchase the $200,000 promissory note.

75.     Prajna and Prajna's assignors Willard and Sangha relied upon these representations and omissions, and would not have loaned any money to the Gavea defendants if they had known the truth concerning their gross profit margins and sales.

76.     As Willard's and Sangha's assignee, Prajna has standing to assert all claims that Willard or Sangha could have brought against the Gavea defendants arising from the Letter Agreement, the Security Agreement, and the $200,000 promissory note.

77.     As a result of Willard's, Sangha's, and Prajna's reliance upon Connelly's false material representations and omissions, Prajna has suffered damages in an amount to be determined at trial, but in no event less than the $340,000 that the Gavea defendants have obtained through the credit facility established under the Letter Agreement and the interest due thereon.

491946-3

<u>SIXTH CLAIM FOR RELIEF: BREACH OF EXCHANGE AGREEMENT</u>
(Against Gavea International, Inc.)

78.     Prajna repeats the allegations contained in paragraphs 1 through 77 above as if fully set forth herein.

79.     Willard, Sangha, and Prajna performed all of their material obligations under the Exchange Agreement; any obligations that they may not have performed are excused by Gavea International's breaches and defaults.

80.     As set forth above, Gavea International has breached the Exchange Agreement by failing to deliver to Prajna and Prajna's assignors any of the shares of its common stock that it had agreed to.

81.     As Willard's and Sangha's assignee, Prajna has standing to assert all claims that Willard or Sangha could have brought against Gavea International arising from the Exchange Agreement.

82.     As a direct, proximate, and foreseeable result of defendants' breaches, Prajna has suffered severe injuries to its business, including without limitation the lack of consideration, that it and to its assignors provided to Gavea International under the Exchange Agreement.  The amount of these losses is to be determined at trial, but in no event are they less than the $100,000 par value of the $100,000 convertible promissory rate that Willard surrendered under the Exchange Agreement, and the $5,000 that Prajna paid under that agreement, plus interest.

<u>SEVENTH CLAIM FOR RELIEF: REPLEVIN</u>
(Against All Defendants)

83.     Prajna repeats each of the allegations set forth in paragraphs 1 through 82 above as though fully set forth herein.

491946-3

84.     As set forth above, the Gavea defendants have defaulted under Section 8 of the Letter Agreement and under Section 14 of the Security Agreement by failing to pay their debts as they became due and by furnishing materially incorrect financial information to Prajna.

85.     These Events of Default entitle Prajna, as the assignee of Willard and Sangha, to pursue any and all remedies available under the Letter Agreement and the Security Agreement.

86.     Prajna holds a perfected first-priority security interest in, and is entitled to immediate possession of, all of the collateral listed in the Security Agreement, including without limitation the proceeds of all collections received on the Gavea defendants' accounts receivable, their equipment, their inventory, including without limitation the merchandise consigned to third parties, their deposit accounts, and their books and records.

87.     In addition, the Gavea defendants and Connelly have interfered with Prajna's rights under Section 14 of the Security Agreement by inaccurately reporting their consignments of merchandise as sales, and by preventing Prajna from receiving accurate financial information.

88.     By reason of the foregoing, Prajna is entitled to and demands a judgment directing Connelly, the Gavea defendants, and their agents, other officers, directors, employees, and consignees to surrender to Prajna's possession all of the collateral in which it holds a security interest, including the Gavea defendants' cash accounts, inventory, consigned merchandise, books and records, computers, and information stored on computers.

89.     Prajna has no adequate remedy at law.

<u>EIGHTH CLAIM FOR RELIEF: INJUNCTION</u>
(Against All Defendants)

90.     Prajna repeats each of the allegations set forth in paragraphs 1 through 89 above as though fully set forth herein.

-18-

91.     As set forth above, the Gavea defendants have defaulted under Section 8 of the Letter Agreement and Section 14 of the Security Agreement by failing to pay their debts as they became due and by furnishing materially incorrect financial information to Prajna.

92.     The Gavea defendants and Connelly have violated, and are continuing to violate, Prajna's rights under the Security Agreement, the Letter Agreement, and the $200,000 promissory note.  As described above, Gavea has misrepresented its sales, and accounts receivables, and has prevented Prajna from receiving financial information.

93.     Unless Connelly and the Gavea defendants are enjoined from disposing of Prajna's secured collateral and otherwise interfering with Prajna's rights under the Letter Agreement, the Security Agreement, and the $200,000 promissory note, Connelly and the Gavea defendants will dissipate that collateral.

94.     By reason of the foregoing, Prajna is entitled to a permanent injunction enjoining Connelly and the Gavea defendants, and their agents, other officers, directors, employees, and consignees, and all those acting in combination and concert with them, from selling, transferring, alienating, or otherwise disposing of any of Prajna's secured collateral, or from further interfering with Prajna's rights with respect to the collateral, including without limitation its rights under the Security Agreement to take possession of the collateral.

95.     Prajna has no adequate remedy at law.

WHEREFORE, Prajna respectfully requests the Court to enter judgment in its favor and against the Gavea defendants as follows:

a)   on the First Claim for Relief, money damages of at least $105,000 plus interest due thereon;

491946-3

b) On the Second Claim for Relief, money damages of at least $105,000 plus interest due thereon;

c) on the Third Claim for Relief, money damages of at least $100,000 plus interest due thereon under the $100,000 convertible promissory note;

d) On the Fourth Claim for Relief, money damages of at least $100,000 plus interest due thereon under the $100,000 convertible promissory note that was surrendered under the Exchange Agreement, and the $5,000 that Prajna paid to Gavea International;

e) On the Fifth Claim for Relief, money damages of at least $340,000 plus interest due thereon under the $200,000 promissory note and the additional $140,000 that the Gavea defendants have obtained from plaintiff's assignors through the credit facility established under the Letter Agreement;

f) On the Sixth Claim for Relief money damages of at least $100,000 plus interest due thereon under the $100,000 convertible promissory note that was surrendered under the Exchange Agreement, and the $5,000 that Prajna paid Gavea International;

g) On the Seventh Claim for Relief, an Order directing Connelly, the Gavea defendants, and their agents, other officers, directors, employees, and consignees to surrender to Prajna's possession all of the collateral in which it holds a security interest, including the Gavea defendants' cash accounts, inventory, consigned merchandise, books and records, computers, and information stored on computers;

h) On the Eight Claim for Relief, an Order enjoining Connelly and the Gavea defendants, and their agents, other officers, directors, employees, and consignees, and all those acting in combination and concert with them, from selling, transferring, alienating, or otherwise disposing of any of Prajna's secured collateral, or from

further interfering with Prajna's rights with respect to the collateral, including without

limitation its rights under the Security Agreement to take possession of the collateral.

i)   On all claims for relief, an award for costs and expenses, including attorneys' fees;

and

j)   Such other and further relief as the Court may deem just and proper.

Dated:   New York, New York
         April 17, 2006

                              OLSHAN GRUNDMAN FROME
                              ROSENZWEIG & WOLOSKY LLP

                              By:   _____
                                    Randy M. Friedberg (RF 8645)
                                    Jack M. Kint, Jr. (JK 7947)
                                    Christine W. Wong (CW 7683)
                                    *Attorneys for Plaintiff Prajna Group Corp.*
                                    Park Avenue Tower
                                    65 East 55th Street
                                    New York, New York 10022
                                    (212) 451-2300

-21-

491946-3